UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL HOOTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-00889-TWP-MPB |
| ) | |
| CORIZON LLC, PAUL TALBOT Doctor, in ) | |
| his official and individual capacity as Health ) | |
| Care Provider for the Indiana Department of ) | |
| Correction, and JAMIE THOMAS, LPN, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Hooten ("Mr. Hooten"), an Indiana state prisoner incarcerated at Pendleton Correctional Facility ("Pendleton") filed this civil rights action on April 20, 2016. Mr. Hooten alleges that Defendants Corizon, Dr. Paul Talbot and Nurse Jamie Thomas failed to provide him constitutionally adequate medical care after he fell in the Pendleton gymnasium on June 28, 2015. The fall caused an AC joint separation and Mr. Hooten reports that he is now experiencing nerve damage in his hand. Mr. Hooten alleges that the Defendants were deliberately indifferent to his serious medical needs by failing to promptly diagnose and treat his shoulder injury.

The Defendants asserted the affirmative defense that Mr. Hooten failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") at 42 U.S.C. § 1997(e). The Defendants now seek summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure arguing that Mr. Hooten failed to exhaust his available administrative remedies within the Indiana Department of Correction ("IDOC") before filing this action. Mr. Hooten opposes this motion for summary judgment.

For the reasons explained below, the Defendants' Motion for Summary Judgment (Filing No. 23) is **granted** and this action is dismissed based on Mr. Hooten's failure to exhaust his administrative remedies.

## I. STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The key inquiry is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330.

## II. UNDISPUTED FACTS

Applying the standards set for above, the following facts are undisputed.

### A. IDOC Grievance Procedures

Since June 28, 2015, Mr. Hooten has been incarcerated at Pendleton. As an inmate incarcerated with the IDOC, Mr. Hooten had access to the Offender Grievance Process. The purpose of the Offender Grievance Process is to provide administrative means by which inmates

may resolve concerns and complaints related to their conditions of confinement. All offenders are made aware of the Offender Grievance Process during orientation and a copy of the Offender Grievance Process is available in various locations within the facility.

The Offender Grievance Process consists of three stages. First, an offender must attempt to resolve the grievance informally through officials at the facility. The offender is required to attempt to contact the Offender Grievance Specialist, Casework Manager, Caseworker, or Unit Team member within five (5) business days from the date of the incident to obtain a State Form 52897 "Offender Complaint-Informal Process Level" form. The offender must attempt to resolve the problem or complaint with the staff in question within five (5) business days from the date of receiving State Form 52897. ([Filing No. 24-2 at 14](#).) "There should be no instance where the time period is over ten (10) business days in returning State Form 52897 . . . to the Offender Grievance Specialist." *Id.* at 15.

If the offender is unable to resolve his complaint informally, he may file a Level I Offender Grievance. This includes the submission of a Level I Grievance form to the Administrative Assistant (also known as the Grievance Coordinator) of the facility. Ms. Camay Francum is the Grievance Coordinator at Pendleton. The time to submit a formal Offender Grievance begins on the earliest of these days and ends five (5) business days later:

1. The day the staff member tells the offender that there will be no informal resolution;
2. The day that the offender refuses an informal resolution offered by staff; or,
3. The tenth (10th) business day after the offender first seeks an informal resolution from staff.

([Filing No. 24-2 at p. 16](#).)

3

Once a Level I Grievance is reviewed by facility officials, and if the problem has not been resolved to the satisfaction of the offender, the offender may appeal the facility's decision by submitting a Level II Grievance Appeal.

An offender has not fully utilized or exhausted the Offender Grievance Process until he completes all three steps of the process. An offender must use the proper grievance forms in order to exhaust successfully and must timely file each grievance within the timeframe outlined by IDOC administrative procedures.

### B.     Plaintiff's Grievance History

While he was incarcerated at Pendleton, only one of Mr. Hooten's Level I medical grievance forms for the time period June 28, 2015 (when he was injured), through the date he filed the present lawsuit on April 20, 2016, was accepted.[1] This was Grievance No. 89505 and concerned Mr. Hooten's objection to his medications being crushed and served with water when dispensed. ([Filing No. 24-3](#).)

There is no record of a formal grievance filed by Mr. Hooten and accepted by the Grievance Coordinator relating to a request that he be provided with treatment for a shoulder injury.[2] In an

---

[1] Mr. Hooten pursued at least three informal grievances:

  1) Mr. Hooten submitted an informal grievance on August 18, 2015, seeking medical care to treat his shoulder and nerve damage. A response was drafted on August 21, 2015. ([Filing No. 31-1 at 2](#).)
  2) Mr. Hooten signed an informal grievance on August 25, 2015, in which he complained that he had been attempting to see the doctor to treat his June 28, 2015 injury. ([Filing No. 31-1 at 7](#).)
  3) Mr. Hooten signed an informal grievance on October 12, 2015, in which he complained that he had limited use of his right arm and that an x-ray showed his AC joint was separated from a fall. He wanted surgery and medication that was not crushed. ([Filing No. 31-1 at 8](#).)

These informal grievances are relevant, but not material to the issues raised in the motion for summary judgment.

[2] In dispute of this statement, Mr. Hooten filed a formal grievance submitted on July 1, 2015, in which Mr. Hooten complained that he was charged $10.00 for filling out a health care request form following his injury on June 28, 2015. Mr. Hooten stated that if the correctional officer had filled out an incident report he would not have been charged. Mr. Hooten disputes this charge. A response was provided by Officer David Chappell on July 9, 2015. Officer

4

attempt to dispute this statement Mr. Hooten presents two formal grievance forms that were returned to him.

Mr. Hooten's Exhibit 3 is a formal grievance form submitted on September 2, 2015, in which Mr. Hooten complains that he injured himself on June 28, 2015, and that the correctional officer should have but did not fill out an incident report. In addition, Mr. Hooten complains that he has not received treatment since his x-rays on August 25, 2015, which allegedly shows a "break in my AC joint." (Filing No. 31-1 at 3.) Mr. Hooten states that he should not be charged money for medical care because his injury happened during recreation. He also seeks evaluation by a doctor to treat his pain and broken joint and nerve pain. Finally he seeks a copy of the radiologist's report of his August 25, 2015 x-ray. However, the September 2, 2015 grievance form was returned as reflected in Mr. Hooten's Exhibit 4, which is a Return of Grievance Form. This exhibit reflects that the September 2, 2015 grievance form was rejected on September 15, 2015 because the grievance was untimely, there was no indication that Mr. Hooten tried to resolve his complaints informally, and the grievance contained multiple issues. Mr. Hooten was directed to separate the issues and submit a separate form for each issue he wishes to grieve. (Filing No. 31-1 at 4.)

Similarly, Mr. Hooten's Exhibit 5 is a formal grievance form that was submitted on September 14, 2015. The grievance form reflects that the date of the incident complained of is June 28, 2015. In this grievance, Mr. Hooten states that he fell and was injured on June 28, 2015. Mr. Hooten states that he is still suffering from an AC joint separation and that he wants to see the doctor for that injury. He complains that if the officer had filled out the injury report on June 28,

---

Chappell states that he called urgent care and followed the answering nurse's instructions by directing Mr. Hooten to fill out a healthcare form. (Filing No. 31-1 at 1.) This formal grievance does not implicate the claim of inadequate medical care alleged in the complaint. In addition, there is no suggestion that Mr. Hooten appealed this grievance. This grievance does not create a material fact in dispute.

5

2015, that he would not still be suffering three months later. He states, "I just want my AC joint fixed and to not be in pain anymore." ([Filing No. 31-1 at 5](#).) This formal grievance was also returned to Mr. Hooten. The Return of Grievance Form associated with the September 14, 2015 formal grievance form states that the formal grievance form was being returned because it was submitted too late. The form states that Mr. Hooten could correct this problem and re-submit the form within five working days. ([Filing No. 31-1 at 5-6](#).)

There is no record of Mr. Hooten filing an appeal of any grievance. In an attempt to dispute this statement, Mr. Hooten filed a Grievance Appeal Form dated September 14, 2015. ([Filing No. 31-1 at 7](#).) In this appeal, Mr. Hooten again states that he fell on the basketball court and hurt himself. He complains about the $10.00 fee associated with his medical care. He also complains that it took two months to see the doctor and have an x-ray taken. Mr. Hooten states that he is in pain and wants medical assistance to resolve the problem. This appeal is not associated with any particular grievance number. In other words, there is no basis to conclude that this appeal is associated with an accepted formal grievance. Nor does it appear that this appeal was received by the facility.

### III. DISCUSSION

The PLRA requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about

6

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required."). Moreover, the PLRA requires "proper exhaustion." "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (*quoting Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006). So here, the Defendants bear the burden of demonstrating that Mr. Hooten failed to exhaust all available administrative remedies before he filed this suit. *Id.* at 681. A remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002), or otherwise use affirmative misconduct to prevent a prisoner from exhausting. *Dole*, 438 F.3d at 809.

The Defendants argue that summary judgment is appropriate because Mr. Hooten failed to exhaust all available administrative remedies before filing this lawsuit. In response, Mr. Hooten argues that he did follow all procedures and that the Grievance Coordinator did receive all

7

necessary documents on time and in proper form as required by policy. Mr. Hooten further argues that Grievance Officer Francum has interfered with his ability to complete the grievance process and has "attempted to falsify documentation related to the issue at hand." (Filing No. 31 at p. 2.) There is no evidence to support Mr. Hooten's claims.

The undisputed evidence shows that Mr. Hooten failed to exhaust his administrative remedies regarding his allegations against the Defendants. There is an offender grievance program in place at Pendleton, as required by IDOC policy. To fully exhaust, the inmate is required to complete all three steps: 1) informal complaint; 2) formal grievance; and 3) appeal. Mr. Hooten has not submitted any evidence which demonstrates that he completed the grievance process. Instead, the evidence establishes that he had available administrative remedies but that he failed to pursue them.

Mr. Hooten submitted two formal grievance forms related to the deficient medical care he was receiving to treat his June 28, 2015 injury. Both forms were rejected for legitimate reasons. As to the September 2, 2015 grievance form, it was rejected as untimely because there was no indication that Mr. Hooten had tried to resolve his complaints informally and because the grievance contained multiple issues. Mr. Hooten was directed to separate the issues and submit a separate form for each issue he wishes to grieve. (Filing No. 31-1 at 4.) He failed to so do.

Similarly, the formal grievance submitted on September 14, 2015 was rejected because it listed the date of the incident complained of as June 28, 2015. The form states that Mr. Hooten could correct this problem and re-submit the form within five working days. (Filing No. 31-1 at 5-6.) Mr. Hooten had the opportunity to correct this error to reflect the date of his ongoing injury, but he failed to do so.

8

Pendleton is permitted to demand strict compliance with the grievance process and the facility may reject a grievance form when a prisoner fails to properly follow the prescribed administrative procedures. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Mr. Hooten did not complete the grievance process before filing the present lawsuit, he has not exhausted the administrative remedies available to him and the Defendants are entitled to summary judgment. *See Booth v. Churner,* 532 U.S. 731, 739 (2001)(the PLRA "eliminated the [district courts'] discretion to dispense with administrative exhaustion."); *Macias v. Zenk*, 495 F.3d 37, 44 (2nd Cir. 2007) (notice of a claim alone is not sufficient to exhaust administrative remedies).

## IV. CONCLUSION

The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Hooten's complaint should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (explaining that "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating"). Defendants' Motion for Summary Judgment (Filing No. 23) is therefore **GRANTED.**

**SO ORDERED.**

Date: 1/4/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael Hooten, #988796
Pendleton Correctional Facility
Electronic Service Participant -- Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com